# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERIN O.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[2] <br><br> Defendant. | No. 18 C 1553 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Erin O. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

Plaintiff applied for DIB on February 3, 2014, alleging that she became disabled on February 8, 2012. (R. at 67). This claim was denied both initially on November 14, 2014, and upon reconsideration on June 1, 2015. (*Id.* at 67, 80). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on December 2, 2016. (*Id.* at 27–57). The ALJ also heard testimony from Linda P. Tolley, a vocational expert (VE). (*Id.*). The ALJ denied Plaintiff's request for DIB on May 22, 2017. (R. at 14–22).

Applying the five-step evaluation process, the ALJ found, at step one, that Plaintiff engaged in substantial gainful activity from her alleged onset date of February 8, 2012 through her date last insured of September 30, 2016. (R. at 16). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, thoracic, and cervical spine and inguinodynia. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulation. (*Id.* at 18).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC) and determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b), except:

> [T]he claimant can lift and / or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/ or walk for about six hours in an eight-hour workday and can sit for about six hours in an eight-hour workday. She can occasionally bend, stoop, crouch, crawl, and climb.

(R. at 19). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step four that Plaintiff was capable of performing past relevant work as Director- Social Services and Case Worker- Social Services. (*Id.* at 21). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of February 8, 2012, through the September 30, 2016, the date last insured. (*Id.* at 21).

On December 29, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable

3

mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is convinced by Plaintiff's argument that the ALJ erred in evaluating the medical opinions of Plaintiff's treating physician.[3]

---

[3] Because the Court remands for this reason, it does not address Plaintiff's other arguments at this time.

4

Under the regulations that apply to claims filed before March 27, 2017, the opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).[4] A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

If a treating physician's opinion is not given controlling weight, an ALJ must still determine what value the assessment *does* merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature

---

[4] The "treating physician rule" was eliminated by SSA for claims filed after March 27, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017). A treating physician's opinion is now governed by 20 C.F.R. §§ 404.1520c, 416.92-0c (2017). *McFadden v. Berryhill*, 2018 WL 317282, at *3 n.1 (7th Cir. 2018). These regulations are not applicable in this case.

5

and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6). The ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Here, the ALJ improperly discounted the opinions of Mark Gomez, M.D. It is undisputed that Dr. Gomez is Plaintiff's treating physician and treated Plaintiff on a monthly basis from April 17, 2014 to November 14, 2016. (*See* R. at 365–403, 409–445, 466–551). On March 15, 2016, Dr. Gomez noted: "Her pains have been chronically debilitating to the point that she can no longer engage in gainful employment. Her pains have adversely affected her [quality of life (QOL)]." (*Id.* at 481). The ALJ discounted this opinion stating: "This is the claimant's subjective report of pain, not an opinion of the treating physician, nor is it supported by the medical record." (*Id.* at 21).

On May 7, 2016, Dr. Gomez wrote a letter on behalf of Plaintiff, indicating that Plaintiff "has been plagued with multiple medical diagnoses for many years, all of which have become progressive in nature necessitating specialist evaluation, prescription medication dependence, and adversely affecting her daily living and quality of life." (R. at 446). Dr. Gomez indicated that her active medical diagnoses include: osteoarthrosis, hyperlipidemia, osteoporosis, opioid dependence, lymphadenopathy, chronic obstructive pulmonary disease (COPD) vitamin D

insufficiency, migraines, left inguinodynia, and chronic neck and back pain. (*Id.*). The doctor noted that Plaintiff is "unable to sustain physical activity without experience severe, 10/10 pain" and that her symptoms have worsened over the course of treatment. (*Id.*). He reported that Plaintiff has reduced range of motion in her neck, back and hips and that her pains are worse with prolonged weight bearing activities such as walking, prolonged sitting, generalized loading of her weight bearing joints, and with range of motion throughout her neck and spine. (*Id.*). Dr. Gomez stated that she has had multiple surgical interventions in efforts to alleviate chronic pain and must continue to take prescription medications. (*Id.*). He noted that the medications "help to better control the pain" and make the pain more tolerable, but "do not completely eliminate the pain." (*Id.*). He indicated that "[s]he sometimes needs assistance to walk and can be considered a fall risk." (*Id.*). Dr. Gomez noted that Plaintiff is unable to perform sustained physical duties of her job without experiencing significant pain and concluded that she "is permanently and totally disabled." (*Id.*).

The ALJ gave "no weight" to this opinion because: 1) "the determination of disability is reserved to the Commissioner"; 2) "Dr. Gomez's opinion is based on the claimant's subjective pain assessment"; 3) "his notes . . . do not specify how limited her range of motion is, or detail exactly what movement is limited"; 4) his notes appear to be "simply copied from prior visits, with no evidence he was performing detailed examinations at each visit"; and 5) Dr. Gomez's opinion "is based on . . . a limitation in range of motion in the neck, back, and hips, while other examining

7

physicians found only a limited range of motion in the neck, consistent with claimant's neck surgeries." (R. at 20–21). There are several errors in the ALJ's analysis of both of the opinions of Dr. Gomez, warranting remand on this issue.

First, while the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard medical evidence as a whole from the treating physician. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Although it is true that the ALJ was not bound by Dr. Gomez's assertions that Plaintiff was too disabled to "engage in gainful employment" and "is permanently and totally disabled," s*ee Garcia v. Colvin*, 741 F. 3d 758, 760 (7th Cir. 2013), Plaintiff's physical and mental ability to work full time "is something to which medical testimony is relevant and if presented can't be ignored." (*Id.*) (citing *Bjornson v. Astrue*, 671, F.3d 640, 647–48 (7th Cir. 2012)). Indeed, an ALJ cannot simply dismiss a treating physician's opinions on the grounds that the issue of disability was reserved for the Commissioner. *See Moore*, 743 F.3d at 1127.

Second, the ALJ did not substantiate his assertion that Dr. Gomez's opinions were improperly based on Plaintiff's subjective complaints. "[I]f the treating physician's opinion is . . . based *solely* on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (emphasis added). However, the Seventh Circuit has cautioned that it was "illogical to dismiss the professional opinion of an examining [physician] simply because that opinion draws from the claimant's reported symptoms." *Aurand v. Colvin,* 654 Fed.Appx. 831, 837 (7th Cir. 2016) (unpublished opinion). "Almost all diagnoses require some

8

consideration of the patient's subjective reports, and certainly [Plaintiff's] reports had to be factored into the calculus that yielded the doctor's opinion." *McClinton v. Astrue*, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012). Here, the ALJ failed to "point to anything that suggests that the weight [Dr. Gomez] accorded Plaintiff's reports was out of the ordinary or unnecessary, much less questionable or unreliable." *Davis v. Astrue*, 2012 WL 983696, at *19 (N.D. Ill. March 21, 2012). Thus, the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusion. *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Moreover, neither the ALJ nor the Commissioner cite to any evidence that Dr. Gomez based his opinion s*oley* on Plaintiff's subjective complaints. Rather, the Court notes that Dr. Gomez conducted detailed physical examinations at each monthly visit. (*See* R. at 406–446, 458–551). Therefore, this reason for denying weight to his opinion is unavailing.

Third, the ALJ's argument that Dr. Gomez's notes are not sufficiently specific and appear to be just copies of previous notes is without merit. The ALJ contends that Dr. Gomez's notes "do not specify how limited her range of motion is, or detail exactly what movement is limited"; and that his notes appear to be "simply copied from prior visits, with no evidence he was performing detailed examinations at each visit." (R. at 20–21). These statements are inaccurate. While some of the initial descriptions in the history of presenting illness section are similar, (*see e.g.* "The narcotic pain medication does control the pain. Pain severity is 10/10 at its worst and is exacerbated by WB neck/ back [range of motion (ROM)], utilization of extremities. The patient is tolerating the pain medication well without significant adverse side

9

effects." (*see e.g.*, R. at 366, 376)), there is documentation that Dr. Gomez conducted physical examinations at each visit with individualized findings, specifying what motion is limited. For instance, on June 16, 2014, the doctor's physical examination revealed "limited ROM of back and neck in all directions; tight paraspinals." (R. at 376). On January 15, 2016, the doctor's specific pain site evaluation indicated "neck and back ROMs are decreased in all directions; non-tender to palp; L groin is tender to palp." (*Id.* at 468). On February 15, 2016, the pain site evaluation showed "neck and back ROMs are decreased in all directions; tender to palp over the cervical and lumbar regions; there is some tenderness to the lower thoracic region as well; L groin is tender to palp." (*Id.* at 475). Contrary to the ALJ's contention, these treatment notes are not merely copies of one another. The notes document not only Dr. Gomez's physical examinations of Plaintiff but also specific pain site evaluations. Accordingly, this rationale by the ALJ for discounting Dr. Gomez's opinion is without merit. *See Scrogham*, 765 F.3d at 696-97 (finding error when the ALJ used "faulty logic" in deeming evidence as inconsistent with treating physician opinion).

Fourth, the ALJ's one example of a contradiction between Dr. Gomez's treatment notes and the record is unavailing. The ALJ states that Dr. Gomez's opinion "is based on . . . a limitation in range of motion in the neck, back, and hips, while other examining physicians found only a limited range of motion in the neck, consistent with claimant's neck surgeries." (R. at 21). The ALJ cites the notes of consulting physician Osaf who saw Plaintiff one time in October of 2014. (*Id.*) (*citing* R. at 333–337). True, Dr. Osaf did not note limited range of motion in the back and hips in his

10

evaluation; however, a one-time evaluation in 2014 does not negate monthly evaluations and physical examinations completed by Dr. Gomez over the course of two years. *See Scott*, 647 F.3d at 739–740 ("The ALJ was not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits"); *Punzio*, 630 F.3d at 710 (finding that an ALJ cannot "cherry pick" a treatment provider's file "to locate a single treatment note that purportedly undermines [the] overall assessment of [plaintiff]'s functional limitations"). Indeed, "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016); *Scrogham*, 765 F.3d at 697 (finding the ALJ erred when she "neither considered nor explained her decision not to consider the rest of [a treating physician's] copious records, which, upon closer review, might indicate that [claimant] was substantially more limited in his physical abilities than the ALJ initially concluded.").

Defendant argues that there are inconsistencies between Dr. Gomez's "highly restrictive opinion" and the record as a whole because the record shows "improvement with a transcutaneous electrical nerve stimulation (TENS) unit, normal strength in her upper extremities, and no neurological abnormalities." (Dkt. 24 at 6, citing R. at 270, 272–73, 275, 335–36). As an initial matter, this argument is an impermissible *post hoc* rationalizations as it was not used by the ALJ. *Meuser*, 838 F.3d at 911 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace");

*Scott,* 647 F.3d at 739 ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue,* 615, F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"). Moreover, the records to which Defendant cites are from 2012 and 2014, whereas Dr. Gomez's treatment occurred from 2014 to 2016. (*See* R. at 270, 272–73, 275, 335–36). These prior treatment attempts shed no light on Plaintiff's later pain symptoms and cannot serve as a proper basis for demonstrating inconsistencies with Dr. Gomez's progress notes up to four years later.

Furthermore, there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce." *Scott,* 647 F.3d at 739. "Improvement" by itself does not demonstrate a lack of disabling symptoms. *See Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) ("The ALJ's reliance on the stated 60% improvement is meaningless because she failed to establish a baseline from which the stated improvement can be measured . . . It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition."). In order to reject Dr. Gomez's opinion based on Plaintiff's response to treatment, "the ALJ must connect how his improvement [in 2012 and 2014] restored Plaintiff's ability to work." *Johnson v. Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D. Ill. Jan. 19, 2017); *see also Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott,* 647 F.3d at 740. Neither Defendant nor the ALJ did so here.

In sum, the Court finds that the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Gomez, which is an error requiring remand. On remand, the ALJ shall properly consider and weigh treating physician opinions, the testimony of Plaintiff, then reevaluate Plaintiff's impairments and RFC, considering all of the evidence and testimony of record and shall explain the basis of her findings in accordance with applicable regulations and rulings. With the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [20] is **GRANTED**, and the Commissioner's motion for summary judgment [23] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 28, 2019

MARY M. ROWLAND
United States Magistrate Judge